## CALIFORNIA CONSERVING CO. v. D'AVANZO.

### No. 85.

Circuit Court of Appeals, Second Circuit.

Jan. 9, 1933.

John M. Chapnick, of New Haven, Conn., for appellant.

Raymond P. Dellinger, of Boston, Mass., for appellee.

Before L. HAND, SWAN, and CHASE, Circuit Judges.

L. HAND, Circuit Judge.

D'Avanzo, the bankrupt, owned a wholesale grocery business in New Haven and on July twenty-seventh, 1929, bought of the petitioner six hundred cases of tomato paste at ten dollars a case. The sale was f. o. b.,

dock at San Francisco; the terms, "90 days trade acceptance from date of shipment from California against regular 2% sight drafts with documents attached." On November sixth, the petitioner shipped three hundred and ten cases, and on November twenty-first D'Avanzo accepted a draft (trade acceptance), for $3,100, the price, and presumably then got the bills of lading, though the record does not show it. The cases reached New York on the thirtieth and D'Avanzo got possession of one hundred and twenty-five of them on December third. On the fourth, a petition was filed against him and a receiver appointed, who later took delivery of the remaining hundred and eighty-five. On December eighteenth the petitioner, learning of the bankruptcy, demanded the paste of the receiver and later filed a petition to reclaim it, which merely alleged that "the contract was entered into and the shipment made * * * as a result of untrue and fraudulent statements made by the bankrupt and his agents." In January D'Avanzo offered a composition to his creditors which was later confirmed, and his property returned to him. Although no answer was filed, the judge referred the petition of reclamation to the referee as special master, before whom the parties appeared and agreed upon the facts, incorporating earlier testimony of the bankrupt, and an accountant's report. The referee reported generally in favor of the petition, and the judge confirmed his report two days later, apparently ex parte. The bankrupt then moved that the report should be "reviewed and reversed," and another judge of the same court upon reconsideration on the merits, confirmed the report anew, and passed an order against the bankrupt for the amount of the draft.

■ In spite of the confirmation of the composition, the jurisdiction of the District Court is now settled in this circuit. In re Kalnitzsky (D. C.) 285 F. 649, affirmed (C. C. A.) 285 F. 652. The procedural irregularities need not detain us; the proceeding was not before the referee as a court of bankruptcy but as special master, and it is wholly immaterial how he described himself in his report. That was indeed much too summary, and we may assume that the first order confirming it was irregular, if for no other reason at least because the time had not yet expired within which to file exceptions. But the parties had a hearing before the master, and another before the second judge; all the evidence which either side wished to put in, was taken, and the merits were determined.

The absence of an answer is not crucial. Although the whole proceeding disregarded the most elementary procedural formalities, no harm has been done and we pass to the merits.

■■ The petition was vague to the last degree; it is impossible to learn more from it than that the bankrupt procured the contract by fraud, and that the petitioner made the shipment in reliance upon it. As pleading, however, it served loosely to apprise the bankrupt of the claim, and apparently he was satisfied. From the evidence it did not indeed definitely appear that on July twenty-seventh, when the contract was made, the bankrupt was so far insolvent that he could not then have intended to pay, but we may by permissible latitude construe the word "shipment" to include the surrender by the seller of the documents of title on November twenty-first, when the bankrupt accepted the draft; and under the actual contract of sale the buyer was bound to return the bill of lading, if he did not honor the bill of exchange. Sales of Goods Act, § 20, subd. 4 (N. Y. Personal Property Law [Consol. Laws, c. 41] § 101, subd. 4). Therefore, if the surrender was procured by fraud, the transaction may be avoided and the lien restored to the petitioner.

On November twenty-first, D'Avanzo was within two weeks of bankruptcy, upon which his assets were found to have a book value of $83,000 and his liabilities $140,000. On February fifth a financial statement had shown net assets of $38,000; he had lost in ten months about $95,000. His books contained disbursements of nearly $20,000, not accounted for; he had long been selling below cost; he withdrew $1,500 in cash after November twenty-first; some $11,600 of his payments were not supported by his books; in November he bought over $80,000 of goods —far beyond his custom, though it is only fair to say that for this he offered a dubious explanation. As he paid his bills promptly and by this means had kept up a fictitious credit theretofore, there is some reason to suppose that, had he kept afloat until February fourth, when it fell due, he would have paid the draft. We could not say therefore that the petitioner affirmatively showed that on November twenty-first he intended not to pay; he may well have meant to do so, if he could go so long. But he must have known that his ability to keep going for ten weeks more was at best a forlorn hope, and his general conduct justifies the conclusion that he thought his end to be not far off.

Starting with Donaldson v. Farwell, 93 U. S. 631, 23 L. Ed. 993, it has been settled by a number of decisions in federal courts that it is a fraud for an insolvent, concealing his condition, to buy goods, for which he does not mean to pay. We have so held in four cases [In re Sol Aarons & Co., 193 F. 646; In re K. Marks & Co., 218 F. 453; In re Sherman, 13 F.(2d) 121; In re Independent Coal Corp., 18 F.(2d) 1]. So has the Eighth Circuit [Gillespie v. Piles, 178 F. 886, 44 L. R. A. (N. S.) 1]; the Third (Halsey v. Diamond Distilleries Co., 191 F. 498); and the Fourth [Manly v. Ohio Shoe Co., 25 F. (2d) 384, 59 A. L. R. 413]. No difficulty in the application of this doctrine arises when it is proved that the buyer positively intends not to pay; but that is often not the case. He may mean to pay if he survives, though he knows that he is extremely unlikely to do so. If his promise declares only that he intends to pay, it would be hard in such a case to say that he has deceived the seller; and the doctrine presupposes some deceit. But promises, like other utterances, must be read with their usual implications. True, they are predictions and no one can foretell the future; the seller knows this as well as the buyer. However, a man's affairs may reach such a pass that ordinarily honest persons would no longer buy, if they had no greater chance to pay; and the seller is entitled to rely upon that implication. He may assume that the buyer would not promise if the odds were so heavy against him. He may read the promise as more than the declaration of a conditional intent, as affirming that that intent had reasonable hope of fruition. In that event, if the buyer knows that it has no such hope, he deceives the seller, as much as though he intended not to pay at all. This duty does not indeed depend upon what reasonable persons would think of his chances; or of how they would interpret the implication of his promise. But if he himself believes his position to be desperate, and if he understands his promise to mean what it normally would, the seller may rescind. Manly v. Ohio Shoe Co., 25 F.(2d) 384, 385, 59 A. L. R. 413 (C. C. A. 4); In re Krauss (D. C.) 2 F.(2d) 999; In re Gurvitz (D. C.) 276 F. 931.

In the case at bar D'Avanzo's affairs by November twenty-first had become so precarious that the petitioner was justified in understanding his acceptance of the draft as a declaration that his ability to pay was not so far compromised as in fact it was. We do not believe that he thought his position brighter than it would have seemed to any one else; or that he supposed his acceptance of the draft to imply less than it did to the petitioner.

Order affirmed.